IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BATHCREST, INC., a Utah corporation,<br><br>   Plaintiff,<br><br><br><br><br>      vs.<br><br><br>SAFEWAY SAFETY STEP, INC., an Ohio corporation, and BCI ACRYLIC BATH SYSTEMS, INC., an Illinois corporation,<br><br>   Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br><br><br><br>Case No. 2:04-CV-1023 TS |

This matter is before the Court on Defendant Safeway's Motion to Dismiss for Lack of Personal Jurisdiction[1] and Defendant Safeway's and Defendant BCI's Motion to Dismiss or, in the Alternative, to Transfer Venue.[2]  For the reasons discussed below, the Court will grant Defendants' Motions to Dismiss because the Court lacks personal jurisdiction over the Defendants.

---

[1]Docket No. 4.

[2]Docket No. 26.

1

## I.  FACTUAL BACKGROUND

This case arises out of Plaintiff Bathcrest's allegations that Defendant Safeway infringed two patents for bathtub walk-through inserts.  Plaintiff is a Utah corporation with its principal place of business in Salt Lake City, Utah.  Defendant Safeway is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Safeway has entered into a licensing agreement with Defendant BCI Acrylic Bath Systems.  BCI is an Illinois corporation with its principal place of business in Palatine, Illinois.

BCI had sent three newsletter to Bathcrest and another Utah company Dream Maker in August, September, and December 2004.  These newsletters discussed Defendant's product, but did not offer it for sale.  A May 2004 newsletter was not sent to Dream Maker and was sent to Plaintiff in Illinois.[3]  The May 2004 newsletter did contain an offer to sell.  Additionally, BCI made approximately $22,500 worth of sales to Bathcrest and Dream Maker.  Finally, BCI also sold to Plaintiff, on October 12, 2004, the accused product, the Safeway Safety Step.  Plaintiff now admits that this sale was orchestrated in an attempt to create personal jurisdiction over Defendant.

## II.  PROCEDURAL BACKGROUND

Defendant Safeway filed a Motion to Dismiss for Lack of Personal Jurisdiction.  Plaintiff Bathcrest filed a Motion for Jurisdictional Discovery.  A hearing was held on these motions on May 25, 2005.   After that hearing, the Court issued an Order Granting Plaintiff's Motion for Jurisdictional Discovery.  With that Order, the Court afforded each party an opportunity to conduct discovery on the issue of whether the Court has personal jurisdiction over the

---

[3]As will be discussed in more detail below, it is unclear whether the May 2004 newsletter was sent to Plaintiff in Utah.

defendants.  The Court allowed each party to submit a brief addressing the fruits of this discovery.

Both parties submitted supplemental briefs on the issue of personal jurisdiction. Additionally, on August 17, 2005, Plaintiff filed an amended complaint which added BCI as a defendant.  In response, both Defendants submitted a combined Motion to Dismiss or, in the Alternative, to Transfer Venue.  Another hearing was held on the issue of personal jurisdiction on September 12, 2005.  The Court ordered another period of jurisdictional discovery.  Both parties have now submitted second supplemental briefs on the issue of personal jurisdiction.

The Court held a third hearing on the Motions on February 27, 2006.  At that hearing, the Court took the matter under advisement.  Having considered the arguments of counsel, the written memoranda, and being otherwise fully informed, the Court will now grant Defendants' Motions to Dismiss.

### III.  PERSONAL JURISDICTION STANDARD

Plaintiff carries the burden of establishing personal jurisdiction over Defendants.[4]  "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[5]  "It is

---

[4] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[5] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

3

frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[6]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[7]  "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[8]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[9]

## IV.  ANALYSIS

The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.  In this case, Plaintiff asserts the Court has both general and specific jurisdiction over Defendants Safeway and BCI.

## A.    GENERAL JURISDICTION

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[10]  A number of factors are relevant to the issue of whether general personal jurisdiction exists, including whether the defendant is: (1) engaged in

---

[6]*Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[7]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[8]*Bell Helicopter Textron, Inc. v. Heliquest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[9]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[10]*Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) shareholders reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in the state; and (12) generating a substantial percentage of its national sales through revenue generated from in-state customers.[11]

1.    SAFEWAY

Plaintiff has failed to show that any of these factors exist as to Defendant Safeway.  As will be discussed in more detail below, Safeway's only connections to Utah are through BCI.  Plaintiff cannot show that general jurisdiction exists over Defendant Safeway because Safeway has not conducted substantial and continuous local activity in Utah.

2.    BCI

BCI has admittedly engaged in business in this state.  BCI has two customers in Utah: Dream Maker and Plaintiff Bathcrest.  BCI has made sales to these two companies which total approximately $22,500.  In addition, certain newsletters were sent to Safeway and Dream Maker.[12]  Finally, BCI has sold one Safeway Safety Step to Plaintiff—a sale which Plaintiff now admits was orchestrated in an attempt to create personal jurisdiction.

Plaintiff argues that these actions are sufficient for the Court to find general jurisdiction exists over BCI.  In support of their argument, Plaintiff points to *LSI Industries, Inc. v. Hubbell*

---

[11]*Id*. at 1295–96 (citing *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930–31 (Utah Ct. App. 1998)).

[12]The Court will discuss these newsletters in more detail below.

5

*Lighting, Inc.*[13]  In that case, the Federal Circuit held that "[b]ased on [defendant's] millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that [defendant] maintains 'continuous and systematic contacts with Ohio.'"[14]

Defendants, on the other hand, point to cases, such as one from this Court, which hold that a small amount of sales to a state does not produce general jurisdiction.[15]  In *Harnischfeger*, this Court, per Judge Winder, held that sales of $39,000 to Utah companies did not create general jurisdiction over the defendant.[16]  The Court held that the defendant's contacts with Utah fell far short of the contact required to establish general jurisdiction.[17]

The Court finds that the minimal contacts that BCI had with Utah are insufficient to establish general personal jurisdiction over them.  These contacts fall short of what is required for the Court to assert general personal jurisdiction over BCI.

B.      SPECIFIC JURISDICTION

The Federal Circuit has established a three-prong minimum contacts test for determining whether specific jurisdiction exists in a particular case: (1) whether the defendant purposefully

---

[13]232 F.3d 1369 (Fed. Cir. 2000).

[14]*Id.* at 1375.

[15]*Harnischfeger Engineers, Inc. v. Uniflo Conveyor, Inc.*, 883 F.Supp. 608, 612 (D. Utah 1995).

[16]*Id.*

[17]*Id.*

directed its activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair.[18]

1.    WHETHER DEFENDANTS HAVE PURPOSEFULLY DIRECTED
      ACTIVITIES AT RESIDENTS OF THE FORUM

a.    SAFEWAY

The Federal Circuit has held that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim."[19]  However, "'[r]andom,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus. . . . Similarly, contacts resulting from the unilateral activity of others do not count."[20]  Further, the *Red Wing* court stated that "doing business with a company that does business in [the forum state] is not the same as doing business in [that state]" and is insufficient to establish personal jurisdiction.[21]  In that case, the court found insufficient contacts to justify personal jurisdiction over the defendant where the defendant only sent cease-and-desist letters into the forum state and had licensees doing business in the forum state.

In *Genetic Implant Systems v. Core-Vent Corp.*,[22] the Federal Circuit found sufficient minimum contacts to justify personal jurisdiction.[23]  In that case, defendant entered into a

---

[18]*Akro Corp. v. Luker*, 45 F.3d 1541,1508–09 (Fed. Cir. 1995).

[19]*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).

[20]*Id*. (quotation marks and citations omitted).

[21]*Id*. at 1361.

[22]123 F.3d 1455 (Fed. Cir. 1997).

[23]*Id*. at 1460.

contract making a third party its exclusive worldwide licensee.[24]  The licensee engaged in a program to develop a market in the forum state.[25]  That program included founding teaching centers in the forum state which were staffed by local periodontists, developing forum state customer lists, and advertising to potential customers in the forum state.[26]  The court found that these activities showed sufficient minimum contacts to justify personal jurisdiction over the defendant.

Plaintiff also relies on *Beverly Hills Fan Co. v. Royal Sovereign Corp.*,[27] in support of its argument that personal jurisdiction exists over Defendant Safeway.  In *Beverly Hills*, the Federal Circuit found personal jurisdiction in Virginia over a foreign manufacturer (Ultec) and an out-of-state distributor (Royal).[28]  The court found that at least fifty-two of Ultec's fans had been sold in Virginia and that the defendants had formed a distribution channel in that state.[29]  *Beverly Hills* is distinguishable from the case before the Court.  Here, there has been only one sale of the alleged infringing product in Utah and that sale was orchestrated by Plaintiff.  There have been no other sales of the product in Utah.  Therefore, Plaintiff's reliance on *Beverly Hills* is unavailing.

---

[24]*Id*. at 1457.

[25]*Id*. at 1458.

[26]*Id*.

[27]21 F.3d 1558 (Fed. Cir. 1994).

[28]*Id*. at 1560.

[29]*Id*. at 1564.

Plaintiff also cites *3D Systems, Inc. v. Aarotech Laboratories, Inc.*,[30] in support of its argument that the Court has specific personal jurisdiction over Safeway and BCI. *3D Systems* involved three defendants: Aarotech, Aaroflex, and Young.[31] Aarotech was the parent company of Aaroflex.[32] Aaroflex conducted certain activities in California, which the Federal Circuit held were sufficient to assert personal jurisdiction over it.[33] The Court found, however, that Aaroflex's activities could not be imputed to its parent company Aarotech.[34] The Court found that Aarotech directed no activity toward the residents of California and, therefore, the Court lacked personal jurisdiction over them.[35] Similarly, here, BCI's actions cannot be imputed to Safeway for the purpose of creating specific personal jurisdiction.

The only evidence arguably linking Safeway to Utah, then, consists of the licensing agreement between Safeway and BCI, and BCI's activities in Utah. There is no evidence to indicate that Safeway had any other contact with Utah or Utah companies. Safeway has entered into a licensing agreement with BCI. BCI was solely responsible for promoting, marketing, distributing, and selling Safeway's products. Safeway has no offices, personnel, or other contact with the state of Utah except through the actions of BCI.

---

[30] 160 F.3d 1373 (Fed. Cir. 1998).

[31] *Id.* at 1375.

[32] *Id.* at 1376.

[33] *Id.* ("Aaroflex provided potential California customers with price quotations, brochures, specification sheets, videos, and sample parts related to its . . . product.").

[34] *Id.* at 1380.

[35] *Id.*

Plaintiff argues that these limited contacts are sufficient to support a finding of personal jurisdiction over Defendant Safeway. Plaintiff also argues that other companies on the "Restricted Entity List" were Utah companies and that Safeway conducted business with these companies. Plaintiff has not provided any evidence and Defendant Safeway refutes this claim. Safeway provides the affidavit of Tom Barzantny which states that the other companies on the "Restricted Entity List" are not located in Utah. Moreover, Defendant has submitted affidavits which state that the "Restricted Entity List" was a list of companies with which Defendant was prohibited from dealing with under the licensing agreement. Plaintiff has not produced any evidence to rebut these claims.

Under the Federal Circuit case law, discussed above, these facts are insufficient to warrant a finding of personal jurisdiction over Defendant Safeway. This is not a situation where Safeway and BCI set up a marketing or distribution system in the state of Utah, as the parties did in *Genetic Implant Systems* and *Beverly Hills*. This case is more like *Red Wing*, where the court stated that merely doing business with a company that does business in a forum state is not enough to establish personal jurisdiction in that forum state. Further, the actions of BCI cannot be imputed to Safeway under *3D Systems*. For these reasons, the Court lacks specific personal jurisdiction over Defendant Safeway.

        b.     BCI

As for BCI, its contacts with Utah are limited. BCI sent newsletters to Plaintiff Bathcrest and Dream Maker. BCI made $22,500 worth of sales to Bathcrest and Dream Maker. Further, BCI has sold one of Defendant's products in Utah. This sale was made to Plaintiff and Plaintiff has admitted that this was done in an attempt to create personal jurisdiction. There is no evidence to suggest that BCI has had any other contact with Utah. The Court believes that BCI's

contacts with Utah are insufficient to establish specific personal jurisdiction it.  Even if they were sufficient, however, Plaintiff's argument still fails under the second prong of the *Akro* test.

  2.  WHETHER BATHCREST'S CLAIMS ARISE OUT OF BCI'S CONTACTS WITH UTAH

Plaintiff's claim that the Court has specific jurisdiction over BCI fails on the second element of the *Akro* test.  The second prong requires that Plaintiff's claim arise out of or relate to those activities conducted by BCI.  The only activity conducted by BCI which Plaintiff may argue are related to its claim is the sending of newsletters which featured the alleged infringing product.  Plaintiff may not rely on the sales of other products to itself and Dream Maker because Plaintiff's claims do not relate to or arise out of these sales.  Nor can it rely on the sale by BCI of the alleged infringing product which Plaintiff orchestrated.[36]

Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention."[37]  The Federal Circuit discussed what constitutes an offer to sell in *3D Systems*.[38]  There the court held that price quotation letters could be considered offers to sell since they contain "a description of the allegedly infringing merchandise and the price at which it can be purchased."[39]  The policy reasons behind § 271(a) include preventing a

---

[36]*See e.g. Edberg v. Neogen Corp.*, 17 F.Supp. 2d 104, 112–113 (D. Conn. 1998) (refusing to exercise personal jurisdiction based on one sale by defendant which was initiated by plaintiff).  *See also Red Wing*, 148 F.3d at 1359 (stating that "contacts resulting from the 'unilateral activity' of others do not count.")*.*

[37]35 U.S.C. § 271(a).

[38]*3D Systems*, 160 F.3d at 1379.

[39]*Id*.

competitor from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee."[40]

The Federal Circuit revisited its holding in *3D Systems* in *Rotec Industries, Inc. v. Mitsubishi Corp.*[41] There the court held that an offer to sell should be defined "according to the norms of traditional contractual analysis" and interpreted to the ordinary meaning under contract law.[42] The court held that "[i]n the absence of a communication with a third party, it is difficult to imagine any commercial detriment of the rightful patentee taking place."[43] Courts have held that in order to be an "offer to sell" an offer must create the power of acceptance in the offeree.[44]

Before the Court may conduct this analysis, it must be determined what newsletters are to be considered. As noted above, there are four newsletters at issue here—May, August, September, and December 2004 newsletters. There has been no argument disputing that the August, September, and December 2004 newsletters were sent to Plaintiff and Dream Maker. Likewise, there is no argument disputing the claim that the May 2004 newsletter was not sent to Dream Maker, since Dream Maker did not become a customer until July. The primary issue is whether the May 2004 newsletter was sent to Plaintiff in Utah.

In the materials provided to the Court, the May 2004 newsletter is addressed to Plaintiff in Illinois. Plaintiff's counsel asserts that the May 2004 newsletter was sent to Plaintiff in both

---

[40]*Id.*

[41]215 F.3d 1246 (Fed. Cir. 2000).

[42]*Id.* at 1255.

[43]*Id.*

[44]*See Moldflow Corp. v. Simcon, Inc.*, 296 F.Supp. 2d 34, 43–44 (D. Mass. 2003).

Utah and Illinois, but that his client did not keep the newsletter that was sent to Utah.  Further, Plaintiff  argues that the Court can presume the May 2004 newsletter was sent to Plaintiff in Utah because, according to the arguments of counsel, Plaintiff's Utah address was on BCI's mailing list.

As noted above, Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[45]  Plaintiff has provided no proof, other than the argument of counsel, that Plaintiff received the May 2004 newsletter in both Utah and Illinois.  No affidavits have been provided to show that the newsletter was sent to Utah.  Nor has an affidavit been provided to show that Plaintiff received the May 2004 newsletter in Utah and discarded it, as Plaintiff suggests.  Plaintiff seeks to have this Court presume that the newsletter was sent to Utah since Plaintiff's Utah address was listed on the mailing list.  Plaintiff, however, has not provided the mailing list at issue to the Court.

Plaintiff further relies on BCI's Answers to Interrogatories[46] in support of its position.  Those answers merely state that BCI sends its newsletters to those on the mailing list and that it has sent newsletters to Plaintiff and Dream Maker in Utah.  Plaintiff argues that since these answers do not state that the May 2004 newsletter was not sent to Plaintiff in Utah, the Court can infer that they were.

The Court will not presume, as Plaintiff requests, that the May 2004 newsletter was sent to it in Utah.  Plaintiff carries the burden of establishing personal jurisdiction over the

---

[45]*Kuenzle*, 102 F.3d at 456.

[46]Docket No. 36, Exhibit B.

defendants.  Plaintiff has failed to carry its burden to the extent that it cannot establish that the May 2004 newsletter was sent to Utah.  Therefore, the Court will not consider it.

In examining the August, September, and December newsletters, the Court finds that they do not offer to sell the alleged infringing product.  The August 2004 newsletter discussed the product at great length, but contains no offer to sell.  The September 2004 newsletter offers brochures concerning the product.  The December 2004 newsletter discusses installation instructions for the product.  None of these newsletters offers to sell the product.  None of these newsletters contains a price.  Most importantly, none of these newsletters create the power of acceptance in the offeree.  Therefore, the Court finds that Bathcrest's claims do not arise out of BCI's contacts with Utah and the Court lacks personal jurisdiction over Defendant BCI and Defendant Safeway.

Even if the Court were to include the May 2004 newsletter in its consideration, the same conclusion would be reached.  The May 2004 newsletter clearly constitutes an offer to sell.  It contains a description of the product as well as a price.  Further, the May 2004 newsletter created the power of acceptance in the offeree.  Those who received the letter could have accepted the offer put forth in the May 2004 newsletter, pursuant to the terms described therein.

If the Court were to consider the May 2004 newsletter, BCI's only contact with Utah which relates to Bathcrest's claim would be the one offer to sell contained in that newsletter.  Plaintiff points to cases—such as *Red Wing*—which state that even a single act can support jurisdiction so long as it creates a substantial connection with the forum as opposed to an

attenuated affiliation.[47]  However, the *Red Wing* court also stated that "[r]andom, fortuitous, or attenuated contacts do not count in the minimum contacts calculus."[48]

The Court finds that the May 2004 newsletter, if considered, is not a contact which creates a substantial connection with the forum, but rather is a random, fortuitous, or attenuated contact which does not support a finding of personal jurisdiction.  As a result, Plaintiff has failed to meet the second prong of the *Akro* test.

### 3.   WHETHER ASSERTION OF PERSONAL JURISDICTION IS REASONABLE AND FAIR

Even assuming that Plaintiff has met the first two prongs of the *Akro* test, the third element cannot be met.  Under the third element of the *Akro* test, the Court considers whether assertion of personal jurisdiction is reasonable and fair.  "This prong embodies the due process considerations of personal jurisdiction and places the burden on the party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable."[49]  "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[50]

---

[47]*Red Wing*, 148 F.3d at 1359 (citing *Burger King*, 471 U.S. at 475 & n.18).

[48]*Id*. (quotation marks and citations omitted).

[49]*3D Systems*, 160 F.3d at 1379–1380.

[50]*Bell Helicopter*, 385 F.3d at 1296.

The Court finds that it is unreasonable and unfair to assert personal jurisdiction over Defendants Bathcrest and BCI as a result of their extremely limited contacts with Utah.  As noted above, Defendant Safeway's only contacts with Utah were through BCI and BCI's contacts were limited to sending a few newsletters, making $22,500 worth of sales to Bathcrest and Dream Maker, and selling one of Defendant's products to Plaintiff in Utah.  It is unreasonable to force Defendants to litigate this case in Utah based on these few contacts.  Further, Utah has little interest in resolving this dispute because of Defendants' limited contacts with Utah.  For these reasons, the Court will grant Defendants' Motions to Dismiss.

C.    CHANGE OF VENUE

The Court will not address Defendants' Motion to Transfer Venue since the Court is dismissing this case based on lack of personal jurisdiction.

## V.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 4 and 26) are GRANTED.  Plaintiff's Complaint is DISMISSED without prejudice.

The clerk of the court is directed to close this case forthwith.

DATED   February 28, 2006.

BY THE COURT:

TED STEWART
United States District Judge

16